United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 17, 2003**

Charles R. Fulbruge III
Clerk

Revised December 4, 2003

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 02-61033

———————————

TYRONE ALEXANDER; KEVIN CARROLL

Plaintiffs - Appellants

v.

TIPPAH COUNTY MISSISSIPPI; JAMES PAGE, In Both His Official
and Individual Capacities; PAUL GOWDY; GARY WELCH, In Both
His Official and Individual Capacities

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi, Oxford

Before KING, Chief Judge, and DAVIS and EMILIO M. GARZA, Circuit
Judges.

PER CURIAM:

Plaintiffs-Appellants Tyrone Alexander and Kevin Carroll,
both Mississippi state inmates, bring suit under 42 U.S.C. § 1983
for two incidents that occurred during their stay at the Tippah
County Detention Facility.  The first incident led Alexander to
bring an Eighth Amendment claim for use of excessive force.  The
second incident, which involved both Alexander and Carroll, gave
rise to claims for unconstitutional conditions of confinement.
Alexander and Carroll brought these Eighth Amendment claims

1

before the district court pursuant to § 1983.  The district court dismissed Alexander's use-of-excessive-force claim for failure to exhaust administrative remedies and granted summary judgment on Alexander's and Carroll's conditions-of-confinement claims.  For the following reasons, we affirm.

## I.    FACTS AND PROCEDURAL HISTORY

**A.    Facts**

On February 6, 2001, Alexander and Carroll, inmates in the Mississippi state prison system, were transported from the Mississippi State Penitentiary in Parchman, Mississippi to the Tippah County Detention Facility ("the Detention Facility").  Alexander and Carroll were housed in the Detention Facility for ten days while awaiting appearances in the Tippah County Circuit Court.  Upon arrival, they were each provided with an Inmate Handbook outlining the Detention Facility's policies and procedures, including its grievance procedures.

The day after arriving at the Detention Facility, a dispute arose between Alexander, Carroll, Defendant Deputy Paul Gowdy, and two prison guards, which lead to a physical altercation.  As a result, Alexander and Carroll were both charged with simple assault of a law enforcement officer and assigned to twenty-four hour administrative segregation in an isolation cell known to the prisoners as "the hole."

The isolation cell is a sparse eight-by-eight concrete room,

2

meant to house one person.  There is no running water and no toilet in the room; the only sanitary facility is a grate-covered hole in the floor, which can be "flushed" from outside the room. The only "bed" in the cell is a concrete protrusion from the wall wide enough for one person.  The cell contains no mattress, sheets, or blankets.  Alexander and Carroll concede that the cell was clean and dry when they arrived.  When first placed in the hole, Alexander and Carroll were stripped of all their clothes; eventually, they were given their boxer shorts to wear.

Approximately one hour after being placed in the cell, Alexander and Carroll were dressed in jumpsuits, handcuffed and shackled, and transported to the courtroom for arraignment on three counts of assault on a law enforcement officer.  Inside the courtroom, Alexander attempted to approach the bench, and interrupted the judge numerous times.  Defendant Sheriff James Page told Alexander to "shut up" and to step back from the bench. Alexander disobeyed this order, so Defendant Deputy Gary Welch placed his gloved hand over Alexander's mouth.  Alexander continued to interrupt the judge, so Page ordered him removed from the courtroom.  Alexander alleges that Page punched him, and that Welch shoved him out of the courtroom.  Once outside, according to Alexander, Welch shoved him, causing his forehead to hit the concrete wall.  Alexander alleges that he developed a knot in the center of his forehead, and that his wrists and ankles bled from the pressure of his handcuffs and shackles.

Alexander was charged with disorderly conduct for his behavior in the courtroom.

Upon returning to the isolation cell, Alexander and Carroll were again stripped down to their boxer shorts. Carroll developed an upset stomach and had to defecate into the floor drain. He was given one sheet of toilet paper with which to clean himself. Carroll's feces--and later, Alexander's feces--obstructed the hole. Carroll and Alexander tried to push the feces down the drain with a piece of a paper plate, which further clogged the drain. When Alexander and Carroll subsequently attempted to urinate, the clogged drain caused their urine to splatter onto the cell floor. At some point, Carroll became nauseated from the smell of the sewage and vomited into the drain.

Alexander and Carroll repeatedly requested help from the guards. The guards attempted to flush the drain, but this did not work. Finally, Gowdy instructed an inmate trusty to spray water into the cell through an opening at the bottom of the cell door. This, unsurprisingly, did not unclog the drain. Instead, it spread the sewage throughout the cell. Alexander and Carroll allegedly requested a mop to clean up the mess, but their request was denied. They contend that they were never given any cleaning supplies.

Alexander and Carroll ate lunch and dinner in the isolation cell. Since the cell had neither running water nor soap, the

4

inmates were not able to wash their hands before eating. Furthermore, according to Alexander and Carroll, they were given no utensils with which to eat.

That night, Alexander and Carroll requested a mattress and a blanket, but were refused. They shared the small concrete slab and attempted to sleep dressed only in boxer shorts. Although the cell is equipped with heat, Alexander and Carroll allege that it was uncomfortably cold that night.

After approximately twenty-four hours in the cell, Alexander and Carroll were released. At this time, they were given paper and writing instruments. Alexander claims that he asked for a grievance form but was told that the Detention Facility had run out. Alexander, however, knew how to compose a grievance and, indeed, wrote to Page and Gowdy to complain about other issues. Alexander never submitted a grievance regarding either the courtroom incident or the conditions in the isolation cell.

After ten days in the Detention Facility, Alexander was transported back to the State Penitentiary in Parchman, where he remains incarcerated. Carroll is currently incarcerated in the Marshall County Correctional Facility in Holly Springs, Mississippi.

B.   **Procedural History**

Alexander and Carroll brought suit under § 1983, alleging violations of their Eighth Amendment rights. Alexander claims

5

that Page and Welch used excessive force against him in the courtroom incident, and both inmates claim that the conditions of confinement in the isolation cell were cruel and unusual. Additionally, Alexander and Carroll assert that Defendant Tippah County failed to instruct, supervise, control, or discipline the individual Defendants regarding the performance of their duties. Alexander and Carroll seek damages for pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, all other damages arising from the alleged constitutional violations, injunctive relief, punitive damages, attorneys' fees, and a declaration that the Defendants violated their civil rights.

After filing an answer, the Defendants moved for summary judgment. The district court dismissed Alexander's use-of-excessive-force claim because he failed to exhaust his administrative remedies. Regarding Alexander's and Carroll's conditions-of-confinement claims, the district court granted the Defendants' motion for summary judgment, after finding that Alexander's and Carroll's Eighth Amendment rights had not been violated and that they were not entitled to any relief as a matter of law.

## II.   DISCUSSION

### A.   Alexander's § 1983 Excessive Force Claim

The district court dismissed Alexander's excessive force claim, finding that he did not properly exhaust his

administrative remedies as required by 42 U.S.C. § 1997e(a). We review de novo a district court's dismissal of a § 1983 suit for failure to exhaust administrative remedies. Days v. Johnson, 322 F.3d 863, 866 (5th Cir. 2003).

The Prison Litigation Reform Act, § 1997e(a), declares: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).[1]

Alexander argues on appeal that the Detention Facility's grievance procedures were inadequate. But it is not for the courts to inquire whether administrative procedures "satisfy 'minimum acceptable standards' of fairness and effectiveness." Booth v. Churner, 532 U.S. 731, 740 n.5 (2001). Under § 1997e(a), a prisoner must exhaust such administrative remedies as are "available," whatever they may be. Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001). If a prisoner has not exhausted all available administrative remedies,

---

[1] Alexander's contention that Porter does not apply to this case is without merit. See Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002) (applying Porter retroactively).

7

dismissal is appropriate.  See id. at 359.

Alexander also argues that the grievance procedures were not "available" to him and that he made reasonable attempts to comply with them.  The evidence, however, shows that grievance procedures were available to Alexander and that he, nonetheless, failed to pursue them.  The Detention Facility's grievance procedures were explained in the Inmate Handbook given to Alexander when he first arrived.  Alexander admits that he knew how to prepare a handwritten grievance and that he was given the necessary paper and writing instruments.  Alexander failed to file a grievance not because he was unable to do so, but because, in his words, "those things were already done, and nothing could be done about it."  While it may be true that the Detention Facility's guards did not give Alexander a pre-printed grievance form, this does not change the fact that he was provided with the means to write one himself.

In light of Alexander's admissions, it is clear that he did not pursue the administrative remedies available to him.  Thus, we conclude that the district court properly dismissed Alexander's excessive-force claim.

**B.   Alexander's and Carroll's § 1983 Conditions-of-Confinement Claims**

The district court granted summary judgment on Alexander's and Carroll's conditions-of-confinement claims, after finding that they suffered no Eighth Amendment violations and that they

8

were not entitled to any relief as a matter of law.

We review de novo the grant of summary judgment, applying the same standards applicable in the district court. Herman v. Holiday, 238 F.3d 660, 664 (5th Cir. 2001). In analyzing whether summary judgment was appropriate, we view the summary judgment evidence in the light most favorable to the non-movant. Id.

We can assume, without deciding, that the deplorable conditions[2] of Alexander and Carroll's isolation cell were "so serious as to deprive [them] of the minimal measure of life's necessities," in this case the basic human need for sanitary living conditions. Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)(quotation marks omitted). At least two additional hurdles to recovery under the Eighth Amendment remain. First, there is the question whether forcing Alexander and Carroll to endure these conditions rises to the level of an Eighth Amendment violation, given that the inmates were released from the isolation cell after twenty-four hours. On the one hand, our court has found violations of the Eighth Amendment for conditions lasting less then twenty-four hours. Palmer v. Johnson, 193 F.3d 346, 354 (5th Cir. 1999) (finding Eighth Amendment violation where inmates were herded into a small outdoor space, deprived of protection from excessive cold and wind, and provided no sanitary

---

[2] Although we must view the facts in the light most favorable to Alexander and Carroll, we pause to note that the Defendants do not deny many of the allegations in this case.

9

means of disposing of their waste, even though the conditions lasted approximately seventeen hours). On the other hand, the length of time spent in the offensive conditions should be taken into account. Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell . . . might be tolerable for a few days and intolerably cruel for weeks or months."); Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998) (finding no Eighth Amendment violation where inmate was kept in filthy cell for only three days and was given cleaning supplies). Since we ultimately conclude that Alexander and Carroll are not entitled to relief, however, we decline to decide whether twenty-four hours in the conditions present in the isolation cell violated their Eighth Amendment rights.

The second hurdle relates to the statutory requirement of a physical injury in order to recover for mental and emotional damages, the denial of which is the focal point of Alexander and Carroll's efforts in this appeal. The district court found that Alexander and Carroll were not entitled to mental and emotional damages because 42 U.S.C. § 1997e(e) requires a physical injury in order to recover these damages, and Alexander and Carroll did not suffer physical injuries.

Under § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional

10

facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The "'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999) (quoting Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)) (alteration in original).

The district court found that the only physical injury suffered by either Alexander or Carroll was nausea: Carroll allegedly vomited from the smell of the raw sewage covering the floor of the isolation cell. While we recognize that vomiting is an unpleasant experience, there is no indication that Carroll's nausea was severe enough to warrant medical attention. Furthermore, Carroll has not alleged that his nausea was a symptom of some more serious malady, or had any lasting effects. Cf. Siglar, 112 F.3d at 193 (holding that an ear that was sore and bruised for three days was nevertheless a de minimis injury). Without these additional allegations, we agree with the district court that the injury (if any) suffered by Carroll was de minimis. Furthermore, we note that Alexander never claimed to have suffered a physical injury from confinement in the isolation cell. Therefore, we find that § 1997e(e) precludes Alexander and Carroll from recovering for their emotional and mental injuries.

In sum, we hold that Alexander and Carroll are entitled to no relief as a matter of law. Thus, we find that the district

11

court properly granted summary judgment to the Defendants on Alexander's and Carroll's conditions-of-confinement claims.

### III.  CONCLUSION

For the foregoing reasons, the district court's dismissal of Alexander's claim of excessive use of force and the district court's grant of summary judgment on Alexander's and Carroll's claims of unconstitutional conditions of confinement are AFFIRMED.