[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14134
Non-Argument Calendar

_____

D.C. Docket No. 4:16-cv-00214-MW-CAS

THOMAS A. FURMAN,

Plaintiff-Appellant,
Cross Appellee,

versus

WARDEN, et al.,

Defendants,

DANIEL CHERRY,
Dr. Regional Medical Director,

Defendant-Appellee,
Cross Appellant,

THOMAS REIMERS,
Dr. Assistant Secretary of Health Services,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(September 11, 2020)

Before MARTIN, ROSENBAUM, and EDMONDSON, Circuit Judges.

PER CURIAM:

In this civil action under 42 U.S.C. § 1983, the district court concluded that defendant prison officials[1] violated the Eighth Amendment by delaying medical treatment for Thomas Furman's hepatitis C viral infection ("HCV"). Furman, a state prisoner proceeding pro se,[2] appeals the district court's denial of Furman's

_____

[1] In the operative complaint, Furman named as Defendants (1) Dr. Daniel Cherry, the Regional Medical Director for the Florida Department of Corrections ("FDOC"), in his official and individual capacities; (2) the Assistant Secretary for FDOC's Department of Health Services (Dr. Ogunsanwo), in his official capacity; (3) the prison's Medical Director (Dr. Matos); and (4) an employee in the FDOC's Central Office (Ebony Harvey). Dr. Ogunsanwo was later substituted as a defendant by the FDOC's current Director of Health Services (Thomas Reimers), in his official capacity.

On appeal, Furman raises no challenge to the district court's dismissal of Dr. Matos for insufficient service of process or to the district court's grant of Defendant Harvey's motion to dismiss. Only Defendants Dr. Cherry and Mr. Reimers are parties to this appeal.

[2] We construe liberally pro se pleadings. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998).

claims for compensatory and for punitive damages. Defendant Dr. Cherry cross-appeals the district court's award of nominal damages in favor of Furman. Reversible error has been shown; we affirm in part and vacate in part the final judgment, and remand for further proceedings.

Furman filed his initial pro se complaint in 2016, while Furman was in the custody of the Florida Department of Corrections ("FDOC").[3] Furman alleged that defendants' refusal to provide a liver biopsy and needed medical treatment for his HCV -- as recommended by prison doctors -- constituted deliberate indifference to Furman's serious medical needs.

The district court ordered Furman to file an amended complaint on a court-approved form. In his second amended pro se complaint, Furman reasserted his claim for deliberate indifference in violation of the Eighth Amendment. Furman alleged he was diagnosed with HCV upon his incarceration in 2004. Over the years, Furman got some medical attention. Furman's HCV remained untreated, however, despite the medical recommendations of seven FDOC doctors and Furman's formal grievances. Because treatment is expensive, Furman said the FDOC had a policy of providing HCV treatment only after a prisoner's liver began showing "signs of deterioration due to the virus." Furman alleged that Dr. Cherry

---

[3] In May 2019, Furman was released from the FDOC's custody and was transferred by extradition to Illinois.

3

was responsible for making final decisions on treatment recommendations and that Dr. Cherry had denied Furman's formal grievances that requested needed medical treatment for his HCV.  As relief, Furman sought injunctive relief and compensatory and punitive damages.

The district court later stayed the proceedings in Furman's suit pending the resolution of a related, class-action lawsuit in Hoffer, et al. v. Jones, N.D. Fla. Case No. 4:17-cv-00214-MW-CAS, in which Furman was a named class member.  The district court ordered Defendants in this civil action to provide regular status reports updating the court on the proceedings in Hoffer.

In an April 2018 status report, Defendants reported that -- pursuant to the district court's mandates in Hoffer -- over 21,000 Florida inmates had been screened for HCV.  Through this process, Furman was identified as having chronic HCV.  The status report provided, however, that Furman's January 2018 lab results were "normal."

Furman objected to the April 2018 status report as presenting false information about his lab results.  Furman attached a copy of his January 2018 lab results, which showed that Furman's "fibrosis score" was 0.67: a score that

indicated "advanced fibrosis" and put Furman in the F3 category on the METAVIR scale.[4]

Defendants' July 2018 status report indicated that Furman was only at the F2 stage. Furman again objected that his test results showed he was "at the Fibrosis-F3 advanced stage" and remained untreated.

Defendants' September 2018 status report provided that the district court in Hoffer had entered a preliminary injunction requiring that inmates at the F3 stage receive HCV treatment before December 2018.[5] Defendants reported that Furman had "progressed from the F2 stage to the F3 stage" and, thus, began HCV treatment in August 2018.

In October 2018, the district court lifted the stay in this case. The district court explained that -- although Hoffer rendered moot Furman's request for injunctive relief -- Furman's request for damages remained unresolved.

The parties filed cross-motions for summary judgment. In support of their motions for summary judgment, Defendants attached declarations from two

---

[4] Under the METAVIR scale -- which is used to measure the severity of liver scarring in patients with HCV -- a person can be classified as F0 (no fibrosis), F1 (mild fibrosis), F2 (moderate fibrosis), F3 (severe fibrosis), or F4 (cirrhosis).

[5] See Hoffer v. Jones, 290 F. Supp. 3d 1292 (N.D. Fla. 2017) (concluding that the FDOC had "not treated HCV-infected inmates as required by the Constitution" and entering a preliminary injunction to "ensure that inmates with HCV receive[d] medical care in a timely manner."). The district court in Hoffer later entered a permanent injunction against the FDOC. See Hoffer v. Inch, 382 F. Supp. 3d 1288 (N.D. Fla. 2019), rev'd in part, vacated in part sub nom. Hoffer v. Fla. Dep't of Corr., No. 19-11921, 2020 U.S. App. LEXIS 27654 (11th Cir. Aug. 31, 2020).

medical doctors: an FDOC doctor (Dr. W) and a third-party contractor who worked as the Statewide Medical Director for the FDOC (Dr. L).

According to Dr. W, Furman's medical records showed that Furman completed his 12-week HCV treatment regimen in November 2018.  Furman was scheduled for a six-month follow-up in May 2019 "to confirm that his viral load was undetectable."  Dr. W opined that "[s]o long as [Furman] does not consume drugs or alcohol and takes proper care of himself going forward, his long-term prognosis is very good."  In addition, Dr. W said that Furman "should not experience any future liver problems or any ill effects related to Hep-C following the completion of successful treatment with Zepatier."

Dr. L reported that Furman's February 2019 lab results indicated that Furman's HCV viral load was "not detected."  Furman was thus deemed "cured" of HCV.  Dr. L opined that -- based on Furman's lab results and imaging studies -- Furman suffered no physical injuries resulting from his HCV infection.  Dr. L said that Furman's "long-term prognosis is very good and he should not experience any liver damage related to Hepatitis-C" as long as Furman avoids drugs and alcohol and "otherwise maintains a healthy lifestyle."

The magistrate judge issued a report and recommendation ("R&R").  The magistrate judge concluded that Defendants had violated Furman's Eighth Amendment rights.  The magistrate judge found that Furman's HCV condition

6

constituted a serious medical need, that Furman's attending medical doctors had recommended treatment, and that those medical recommendations and needed treatment were denied. The magistrate judge took judicial notice of the testimony in Hoffer that "the reason why inmates weren't being treated was because of a lack of funding." The magistrate judge then said that "[t]he lack of funding to provide necessary and life saving treatment" was no excuse for Defendants' failure "to comply with the requirements of the Eighth Amendment."

The magistrate judge also noted that -- although Furman's January 2018 lab results demonstrated that Furman was already at the F3 stage -- Defendants' April and July 2018 status reports conveyed incorrectly that Furman's lab work was "normal" or that Furman was only at the F2 stage. The magistrate judge said that "[t]o make such an incorrect assertion more than once . . . [was] not taken lightly," that Defendants' mischaracterization of the evidence was "troubling," and that the erroneous statements were "demonstrative of the indifference shown to [Furman] over the years by the [FDOC]."

Despite concluding that Furman had demonstrated a constitutional violation, the magistrate judge recommended that the district court deny Furman's requests for compensatory and punitive damages. The magistrate judge recognized that "[t]here is no question that one diagnosed with HCV who is unable to receive

doctor-recommended treatment would suffer mentally and emotionally."[6] Nevertheless, the magistrate judge found that Furman had received a full course of treatment for HCV and that the only evidence about Furman's post-treatment condition indicated that Furman's fibrosis score had decreased, that the virus was undetectable, and that Furman was then cured. According to the magistrate judge, Furman produced no evidence that he suffered more than a de minimis physical injury as a result of the delay in treatment. So, the magistrate judge concluded that Furman was unable to recover compensatory and punitive damages under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e).

No defendant objected to the magistrate judge's R&R. Furman did object.

Then, the district court adopted in part the magistrate judge's R&R, granted in part Furman's motion for summary judgment and granted in part Defendants' motions for summary judgment. The district court determined that Furman had demonstrated that Defendants violated his Eighth Amendment rights. The district court, however, agreed that Furman was unentitled to compensatory and punitive damages for the improper delay in treatment: Furman, the judge thought, had produced insufficient evidence of a physical injury. The district court noted that -- while there may now be some residual damage to Furman's liver -- nothing in the

---

[6] The later district court opinion is silent on this exact point; but nothing to the contrary is said or hinted at by the district judge.

record evidenced the extent to which such damage was caused by Furman's HCV infection.

The district court determined, however, that Furman was entitled to nominal damages. The district court thus awarded Furman $100 in nominal damages against Dr. Cherry. This appeal followed.

## I.

We first address Dr. Cherry's challenge to the district court's conclusion that Dr. Cherry was deliberately indifferent to Furman's serious medical needs, in violation of the Eighth Amendment. Dr. Cherry acknowledges that -- by failing to object to the magistrate judge's R&R -- he has waived his right to challenge that conclusion on appeal. See 11th Cir. R. 3-1 ("A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation . . . waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions . . ..").

Notwithstanding his waiver, Dr. Cherry urges us to consider his deliberate-indifference argument on appeal. Dr. Cherry first contends that 11th Cir. R. 3-1 should not apply "when a district judge sua sponte alters a recommendation in a way that materially impacts the non-objecting party." In the alternative, Dr.

Cherry says he qualifies for an exception to Rule 3-1, which permits "review on appeal for plain error if necessary in the interests of justice." We are unpersuaded.

The R&R focused chiefly on whether Defendants were deliberately indifferent to Furman's serious medical needs and concluded that the answer to that question was "yes." The magistrate judge -- citing to Rule 3-1 and 28 U.S.C. § 636 -- notified the parties that they could file written objections to the R&R and advised the parties that failing to object would result in a waiver.

On appeal, Dr. Cherry says he "elected not to object" to the R&R because -- without an award of damages -- the magistrate judge's conclusion that Dr. Cherry was deliberately indifferent to Furman's serious medical needs "had no adverse effect." Dr. Cherry says the deliberate-indifference determination became objectionable only when the district court sua sponte awarded Furman nominal damages.

That Dr. Cherry (who was represented by counsel) made a conscious decision to forgo his appellate argument on deliberate indifference -- despite express warnings about waiver and even though no final judgment yet had been entered about Furman's entitlement to damages -- does not make it necessary for us to set aside our rules or to find that appellate review is "necessary in the interests of justice."

10

Dr. Cherry is precluded from challenging on appeal the district court's conclusion that Defendants acted with deliberate indifference in delaying treatment of Furman's HCV. We affirm the district court's grant of summary judgment in favor of Furman on that issue. [7]

## II.

On appeal, Furman argues that the district court erred in granting summary judgment in favor of Defendants on Furman's claims for compensatory and punitive damages.[8] Furman says that he suffered permanent liver damage as a result of the delay in his HCV treatment and that he suffered a greater-than-<u>de-minimis</u> physical injury for purposes of the PLRA.

We review <u>de novo</u> a district court's grant of summary judgment, viewing the evidence and all reasonable inferences in the light most favorable to the non-moving party. <u>Mann v. Taser Int'l, Inc</u>., 588 F.3d 1291, 1303 (11th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine

---

[7] Judge Rosenbaum, after applying the plain error standard of review, would affirm on the merits the district court's decision about the Eighth Amendment violation.

[8] Furman raises no challenge to the district court's denial of his request for injunctive relief.

11

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under the PLRA, a prisoner may not recover monetary damages (compensatory or punitive) "for mental or emotional injury suffered while in custody without a prior showing of physical injury." See 42 U.S.C. § 1997e(e); Al-Amin v. Smith, 637 F.3d 1192, 1199 (11th Cir. 2011); Smith v. Allen, 502 F.3d 1255, 1271 (11th Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277, 283 n.3 (2011). We have said that to avoid section 1997e(e)'s bar on the recovery of monetary damages, a prisoner's alleged "physical injury must be more than de minimis, but need not be significant." Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir. 1999), op. reinstated in part on reh'g, 216 F.3d 970 (11th Cir. 2000) (en banc).

In adopting the de minimis standard, we combined the "physical injury analysis under section 1997e(e) with the framework set out by the Supreme Court in Hudson [v. McMillian, 503 U.S. 1 (1992)] for analyzing claims brought under the Eighth Amendment for cruel and unusual punishment." See Harris, 190 F.3d at 1286-87. We explained that a de minimis standard was appropriate in the light of the PLRA's "essential purpose" -- "to curtail frivolous and abusive prisoner litigation" -- and of "our basic understanding that 'routine discomfort is part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 1286.

12

We have had little occasion to apply the de minimis standard announced in Harris; so we consider as persuasive authority decisions from other circuit courts on the kinds of injuries that might meet this standard.  Generally speaking, circuit courts have concluded that harms reflecting no more than the kind of "routine discomfort" associated with incarceration fail to satisfy the de minimis threshold. See, e.g., Harris, 190 F.3d at 1287 (concluding that a prisoner's being forced to "dry shave" constituted a de minimis injury not cognizable under section 1997e(e)); Alexander v. Tippah Cty., 351 F.3d 626, 631 (5th Cir. 2003) (nausea and vomiting caused by the smell of raw sewage constituted no more than a de minimis injury under section 1997e(e)); Oliver v. Keller, 289 F.3d 623, 629 (9th Cir. 2002) (allegations about "back and leg pain from sitting and sleeping on the benches and floor of the temporary cell" were only de minimis injuries for purposes of section 1997e(e)).

At the other end of the spectrum, injuries that have been found to exceed the de minimis threshold go beyond "routine discomfort" and often include injuries requiring medical attention or resulting in permanent injury.  See, e.g., Hudson, 503 U.S. at 10 (concluding that "bruises, swelling, loosened teeth, and a cracked dental plate" were not de minimis injuries for purposes of the Eighth Amendment); Taylor v. Stevens, 946 F.3d 211, 225 (5th Cir. 2019) (a prisoner showed a more-than-de-minimis physical injury under section 1997e(e) when -- as a result of

13

having to hold his urine for an extended period -- "his bladder became distended and he had to be catheterized"); Flanory v. Bonn, 604 F.3d 249, 254, 256 (6th Cir. 2010) (periodontal disease and a tooth extraction following a complete deprivation of toothpaste for 337 days satisfied section 1997e(e)'s physical injury requirement); McAdoo v. Martin, 899 F.3d 521, 525-56 (8th Cir. 2018) (a shoulder fracture requiring surgery and physical therapy and resulting in "some amount of permanent disability" was beyond de minimis); Pierce v. Cty. of Orange, 526 F.3d 1190, 1224 (9th Cir. 2008) (a paraplegic prisoner who suffered recurrent bladder infections and bed sores -- injuries that "pose significant pain and health risks to paraplegics" -- showed more than de minimis injuries under section 1997e(e)).

In the light of the statutory language and purpose, our precedent, and this persuasive authority, we conclude that Furman has shown a physical injury -- during the period of wrongful delay in needed treatment -- that went beyond the de minimis standard under section 1997e(e). Furman was diagnosed with HCV in 2004: a serious medical condition that remained untreated when Furman filed this civil action in 2016. Furman says that -- as a result of Defendant's refusal to treat his HCV -- he experienced a permanent and life-threatening deterioration of his liver. Furman's allegations are supported by evidence showing a steady increase in Furman's alanine aminotransferase ("ALT") levels (a measure of liver enzymes in

the blood indicative of liver damage) and HCV viral load over time and by evidence that Furman had "advanced fibrosis" by early 2018.[9]

Living with known-but-untreated hepatitis C is no "routine discomfort" of confinement.  Instead, this too-long untreated hepatitis C -- which Furman's prison doctors determined necessitated earlier medical treatment and with evidence of permanent liver damage -- is more comparable to the severity of physical injuries involved in Hudson, Taylor, Flanory, McAdoo, and Pierce, that were found to satisfy the de minimis standard.  Our determination that Furman's long-untreated hepatitis C is more than de minimis harm is further supported by our conclusion -- in the context of the PLRA's three-strikes provision -- that a prisoner's allegation of "a complete lack of treatment for his hepatitis C" is sufficient to show that he is in "imminent danger of serious physical injury" under 28 U.S.C. § 1915(g).  See Mitchell v. Nobles, 873 F.3d 869, 874 (11th Cir. 2017) (quotations omitted) (citing Brown v. Johnson, 387 F.3d 1344 (11th Cir. 2004)).

Defendants do not dispute -- and have produced no evidence rebutting -- that Furman sustained physical damage to his liver and experienced declining liver function during a time when evidence supports he was entitled to more care.

---

[9] According to Furman's medical records, Furman's ALT was measured as 79 IU/ml in January 2007, 84 IU/ml in June 2007, and 105 IU/ml in September 2007 (with a normal limit between 0 - 55 IU/ml).  Furman also alleges that his ALT had reached 279 IU/ml by January 2016.  Furman's HCV viral load increased from 4,040,000 IU/L in January 2007 to 25,000,000 IU/L in May 2014.

15

Defendants, instead, point to evidence that Furman is now cured of HCV: all's well that ends well.  That Furman's HCV (the virus) was ultimately treated successfully, however, does not make trivial Furman's physical injury during the time before the virus was cured and when needed treatment was wrongfully delayed to him.

Because Furman has satisfied the more than de minimis standard for purposes of section 1997e(e), the district court erred in concluding that Furman, as a matter of law, was barred from recovering compensatory and punitive damages -- including damages for mental or emotional injury during the time of delay that was wrongful per the Constitution.  If Furman's liver is less good after the virus was cured than it would have been with constitutionally timely treatment, he is entitled to compensation for that harm too.  Accordingly, we vacate the district court's grant of summary judgment in favor of Defendants on the issue of compensatory and punitive damages and remand for further proceedings.[10]

---

[10] For damages, we stress that we are not granting summary judgment to Furman.  Among other things, on this record, we cannot say no room exists to dispute about the point when the delay became an unconstitutional delay.

III.

In his cross-appeal, Dr. Cherry challenges the district court's award of nominal damages in favor of Furman.[11]  Dr. Cherry argues that -- because Furman's amended complaint never requested nominal damages -- the district court erred in awarding <u>sua sponte</u> such damages.[12]  We do not agree that the award was unrequested by Furman.

Under the PLRA, "[n]ominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."  <u>Hughes v. Lott</u>, 350 F.3d 1157, 1162 (11th Cir. 2003).  "[T]he availability of nominal damages serves a symbolic function: it 'recognizes the importance to organized society that those rights be scrupulously observed,' even if no injury occurs that would justify compensatory damages."  <u>Brooks v. Powell</u>, 800 F.3d 1295, 1308 (11th Cir. 2015) (citing <u>Carey v. Piphus</u>, 435 U.S. 247, 266 (1978)).

---

[11] Dr. Cherry raises no challenge to the district court's determination that $100 was an appropriate award amount.

[12] Dr. Cherry also contends that the district court erred in awarding nominal damages because nothing evidences that he caused the violation of Furman's Eighth Amendment rights.  Dr. Cherry, however, has waived his right to challenge on appeal the district court's conclusion that Dr. Cherry was deliberately indifferent to Furman's serious medical needs.

17

We see no error in the district court's award of nominal damages in this case. Because Furman proved that Defendants violated his Eighth Amendment rights, Furman was eligible for an award of nominal damages despite the district court's determination that Furman was unable to recover compensatory or punitive damages. Moreover, that the operative complaint in this case included no specific request for nominal damages does not foreclose their availability.

For a non-lawyer, pro se litigant (at least), a plea for compensatory damages or for general damages, includes nominal damages: the greater includes the lesser. Cf. Carey, 435 U.S. at 250-51, 267 (concluding plaintiffs were entitled to nominal damages for the violation of their constitutional rights where plaintiffs' complaints sought only declaratory and injunctive relief and actual and punitive damages); Farrar v. Hobby, 506 U.S. 103, 112 (1992) ("Carey obligates a court to award nominal damages when a plaintiff establishes [a constitutional violation] but cannot prove actual injury."). Besides, for the most part, a district court may grant relief to which a plaintiff is entitled even when that relief is not requested in the complaint. See Fed. R. Civ. P. 54(c) (other than default judgments, "[e]very other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); see also Hughes, 350 F.3d at 1162-63 (stressing that a district court should consider whether the pro se prisoner's complaint could be construed liberally as requesting nominal damages).

18

Furman's claims for compensatory and punitive monetary damages were sufficient to put Dr. Cherry on notice that nominal damages might be awarded.

IV.

On appeal, Furman seeks compensation from Defendants for costs Furman incurred in the district court proceedings.

Generally speaking, a "prevailing party" can recover certain statutorily enumerated costs. See Fed. R. Civ. P. 54(d)(1); 28 U.S.C. § 1920. To recover allowable costs, however, a prevailing party must file a bill of costs in the district court. 28 U.S.C. § 1920. The local rules for the Northern District of Florida provide that a bill of costs must be filed within 14 days after the entry of judgment. N.D. Fla. Civ. R. 54.2.

Defendants contend Furman's request for court costs should be denied (1) because Furman was no "prevailing party" in the district court and (2) because Furman failed to file timely a bill of costs. We need not decide the prevailing-party issue because -- even if Furman was the prevailing party below -- he never filed a bill of costs in the district court. For now at least, Furman is thus unable to recover costs for the district court proceedings.

19

V.

In sum, we affirm the district court's grant of summary judgment in favor of Furman on the issue of Defendants' deliberate indifference in violation of the Eighth Amendment.  We vacate the district court's grant of summary judgment in favor of Defendants on Furman's claims for compensatory and punitive damages.

We remand the case to the district court for further proceedings on the issue of damages.  Furman has demonstrated a physical injury sufficient for purposes of section 1997e(e).  Accordingly, Furman may be entitled to compensatory damages based on actual injuries caused by Defendants' unconstitutional delay in treating Furman's HCV.  Furman says he lived with, feared, and worried about the consequences of hepatitis C during a time he ought to have gotten more care.  Furman also contends that -- although his HCV is now cured -- he sustained some permanent damage that could have been avoided with timely (per the Eighth Amendment) treatment.  Given these allegations and evidence in the record, Furman's damages might include (but are not limited to) compensatory damages (1) for physical, mental, and emotional suffering during the period of unconstitutional delay in treating Furman's HCV; and (2) for injuries associated with permanent liver damage that is due to the unconstitutional delay in treatment. Because the district court determined that compensatory and punitive damages

20

were unavailable, the district court made no factual findings or conclusions about the extent of Furman's actual injuries or the value of damages to which Furman might be entitled. Accordingly, we remand for the district court to address those matters.

About nominal damages, we affirm the district court's decision that nominal damages could be awarded per Furman's amended complaint. We note, however, that nominal damages are awarded typically when a plaintiff demonstrates a constitutional violation but is <u>unable</u> to prove actual injury sufficient to recover compensatory damages. Cf. <u>Farrar</u>, 506 U.S. at 115 ("In a civil rights suit for damages . . . the awarding of nominal damages . . . highlights the plaintiff's failure to prove actual, compensable injury."). Accordingly, we vacate the nominal damages award of $100 because the entire matter of damages must be re-examined on remand.[13]

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

---

[13] We do not today rule out that only nominal damages will prove to be due ultimately, after further proceedings on remand.