# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 30, 2021

Lyle W. Cayce
Clerk

No. 19-50465

Joshua Jones,

*Plaintiff—Appellant*,

*versus*

Ronald Givens; Frank Stengel; Rhonda Hackett; James Tanner; James Green; Donnie Todd; Roberto Alexandre,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-1270

Before Elrod, Southwick, and Costa, *Circuit Judges*.

Per Curiam:*

Joshua Jones, a Texas state prisoner, filed a complaint *pro se* under 42 U.S.C. § 1983 against the warden and officers of the prison at which he was detained. Jones sought damages to compensate for lost property and for injuries he sustained because of the officers' use of excessive force and the

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

officers' failure to provide medical attention when Jones had a seizure. The district court granted summary judgment in favor of the defendants because Jones had not pursued administrative remedies on his claims before presenting them in his § 1983 complaint. The district court, however, did not account for Jones's contention that the defendants' threats of further violence and retaliation deprived him of an available administrative remedy. We therefore VACATE the summary judgment and REMAND.

## I.

In November 2018, Jones filed his § 1983 complaint against Ronald Givens, then warden of the John B. Connally Unit, as well as assistant warden Frank Stengel and officers Rhonda Hackett, James Tanner, James Green, Donnie Todd, and Roberto Alexandre. Jones sought damages and declaratory judgment for injuries, including a broken shoulder, and for loss of property. Jones also emphasized that Hackett, Green, Tanner, and Alexandre each threatened him should he use the prison grievance system to complain about their actions.

## A.

According to a document titled "Declaration under Penalty of Perjury," which Jones attempted to file with the district court, Jones suffered harms from four groups of interrelated incidents over the course of a year and a half.[1]

First, in August 2017, Jones was moved to a medical unit—previously identified in his complaint as the Jester IV Psychiatric Facility. While he was away, Alexandre packed up and then lost his property. Upon his return to

---

[1] In his declaration, Jones recounts the events giving rise to his injuries non-sequentially. The following paragraphs reorder the content of Jones's statements chronologically.

Connally, Jones discussed this with Warden Givens and wrote a grievance against Alexandre.  The property was not returned nor was Jones reimbursed.

Second, in November 2017, Hackett witnessed Jones having a seizure in his cell.  Hackett refused to render aid or call for medical assistance.  Instead, she said that if Jones had another seizure, she would leave Jones on the floor of his cell.  Jones did have another seizure the next week—Hackett, true to her word, told Jones she was "not put[t]ing up with this tonight" and left him.  Jones wrote up a complaint against Hackett for these incidents.

Third, in December 2017, Green falsified documents in connection with a disciplinary proceeding.  He also falsely stated that he had taken Jones's statement for the proceeding, even though he had not.

Finally, in January 2018 Jones complained to officers in the common dayroom that the water in his cell was not working.  Hackett and Green both came to the dayroom in response.  Green falsely told Jones that a plumber was in the building to fix the problem.  Hackett ordered Jones back to his cell, otherwise she would "run my team on you and gas your a**."  Hackett further exclaimed "you don't think I [re]member when you wrote me up" regarding the seizures.  Jones explained once more that the water in his cell was not working, but Green, at Hackett's signal, sprayed Jones in the face with mace.  Jones was then slammed to the ground, injuring his shoulder.

On January 26, Jones complained about the water issue once more to Tanner.  Jones also related to Tanner how Hackett and Green had responded to his earlier complaints.  Tanner "refuse[d] to listen" and instead ordered Jones back to his cell.  Jones reiterated his complaint about the water.  Another officer then slammed a handcuffed Jones to the ground, further injuring his shoulder.  While Jones was lying on the ground, Tanner went to Jones's cell, threw out all of his possessions, and took his identification card.

No. 19-50465

A medical examination later revealed that a bone in Jones's shoulder had been broken and would require surgery to be repaired.

B.

After filing his complaint, Jones filed a motion for production of documents. In it Jones sought, among other things, his prison medical records, his mental health records, maintenance records for his cell from January of 2018, an allegedly falsified document involving Green, video footage showing the alleged instances of use of force, certain documents called "I-60's" filed by Jones, and the disciplinary and work-history files of Hackett and Tanner. The defendants moved for a protective order in response.

The defendants then moved for summary judgment, contending that Jones had not exhausted the administrative remedies available to him in the Texas Department of Criminal Justice. The defendants explained that the Department "provides a two-step procedure for processing administrative grievances." An inmate must first file a "Step One" grievance within fifteen days of the alleged incident. Prison administration handle grievances at Step One. If the inmate does not prevail, he can file a "Step Two" grievance with the State of Texas within ten days of an adverse Step One decision.

The defendants attached to their motion for summary judgment approximately 200 pages of grievances filed by Jones Between May 1, 2017 and April 1, 2018. The defendants contended that, amidst all these grievances, Jones had not filed a single Step One grievance naming any of the defendants or mentioning any of the allegations in his complaint.

In response, Jones moved for an evidentiary hearing. In that motion, he asserted that he did not file grievances on these claims against these defendants because he "was in fear of his life." Because of threats made by the defendants, Jones felt "like his life is in danger if he goes through the

grievance process."[2]    Jones then re-urged his request for production of documents to further substantiate his allegations.

The district court reviewed the 200 pages of grievances offered by the defendants and concluded that Jones had not exhausted his administrative remedies.   The district court also dismissed "Plaintiff's concerns about retaliation" as irrelevant and incredible.   The district court deemed the concerns irrelevant because the exhaustion requirement is mandatory, even in "'special' circumstances."   The district court doubted the credibility of Jones's concerns because Jones's "impressive record of filing grievances defies his claim he feared retaliation."   The district court granted summary judgment to the defendants and denied all pending motions—including Jones's motion for discovery and for an evidentiary hearing—as moot.   It dismissed the case with prejudice.

The same day that the district court granted summary judgment, Jones's response in opposition to summary judgment was stamped as filed by the district court clerk.   The response, however, was recorded on the docket after the summary-judgment order.   *Compare* Pro se Response to Motion, *Jones v. Givens*, No 5:19-CV-1270 (W.D. Tex. Apr. 24, 2019), ECF No. 30, *with* Memorandum Decision Order, *id.*, ECF No. 27.   The response once more emphasized Jones's fear of retaliation should he pursue the grievance process.   The response also re-urged Jones's request for production of documents.

---

[2] Jones raised his fear of retaliation to the district court several times.   In his response to the defendants' summary judgment motion—filed the same day as the district court's order, April 24, 2019, twenty-five days after the defendants filed their motion for summary judgment—Jones argued that he did not exhaust administrative remedies because he feared retaliation.  Jones then filed a Rule 59(e) motion to amend the judgment, re-urging once more his fear of retaliation.   The district court denied the Rule 59(e) motion for the reasons set forth in its summary-judgment order.

Jones timely appealed.[3]

## II.

We review the grant of summary judgment *de novo*, applying the same legal standards as the district court. *Lexon Ins. Co. v. Fed. Deposit Ins. Corp.*, No. 20-30173, 2021 WL 3282023, at *2 (5th Cir. 2021); *Arnold v. Williams*, 979 F.3d 262, 271 (5th Cir. 2020). A party is not entitled to summary judgment unless "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Accordingly, we will reverse summary judgment if the district court applied the wrong legal standard when determining whether the movant was "entitled to judgment as a matter of law." *Id.*; *Nowlin v. Resol. Tr. Corp.*, 33 F.3d 498, 506 (5th Cir. 1994).

The Prison Litigation Reform Act requires all federal or state prisoners to exhaust "such administrative remedies as are available" for a claim before bringing that claim to federal court. 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Jones alleges various forms of mistreatment by officers in the Connally state prison, and so his claims are subject to the exhaustion requirement. *Cf. Alexander v. Tippah Cnty.*, 351 F.3d 626, 629–30 (5th Cir. 2003).

As the district court correctly noted, the exhaustion requirement in § 1997e is "mandatory," "foreclosing judicial discretion" to excuse failure

---

[3] The district court denied Jones's motion to proceed *in forma pauperis* on appeal. A judge of this court, however, determined that Jones's appeal was taken in good faith and granted *in forma pauperis* status to Jones.

to exhaust, "irrespective of any 'special circumstances.'" *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016). On this basis, the district court concluded that Jones's "concerns about retaliation . . . , even if true, do not excuse his failure to utilize the grievance procedure." This was error.

Prisoners must exhaust all "administrative remedies [that] are *available*." 42 U.S.C. § 1997e(a) (emphasis added). The Supreme Court has held that otherwise viable grievance procedures can be rendered "unavailable" to prisoners by the "machination, misrepresentation, or intimidation" of prison administrators.[4] *Ross*, 136 S. Ct. at 1860. "[A]ppellate courts," including ours, "have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures." *Id.* at 1860 & n.3 (citing *Davis v. Hernandez*, 798 F.3d 290, 295 (5th Cir. 2015)).

This case presents facts that, if true, very well might render the grievance system unavailable to Jones—*i.e.*, that Hackett had already retaliated against him for reporting her and that the defendants have threatened harm against Jones should he use the prison grievance system to complain about their actions. Nevertheless, "[t]he district court did not apply the standard set forth in *Ross* for determining whether the administrative remedies unexhausted by [Jones] were 'available' to him." *Hinton v. Martin*, 742 F. App'x 14, 15 (5th Cir. 2018). Nor did it allow any discovery on the issue, despite Jones's repeated and specific requests for

---

[4] The Supreme Court in *Ross* defined three categories of instances in which administrative remedies become unavailable: (1) "when (despite what regulations or guidance materials may promise) [the prison grievance procedure] operates as a simple dead end;" (2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60.

documents and video footage. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (noting that parties need not "produce evidence in a form that would be admissible at trial in order to avoid summary judgment"); *cf. Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1287 (5th Cir. 1990) (requiring specificity in discovery requests made in opposition to summary judgment). The district court's incomplete analysis of the legal question before it "requires that we vacate the judgment below and remand to allow the District Court" to conduct the *Ross* analysis in the first instance "and, if necessary, hold an evidentiary hearing to determine the validity of [Jones's] assertions." *Henry v. Van Cleve*, 469 F.2d 687, 687–88 (5th Cir. 1972).[5]

\*    \*    \*

For the reasons set forth above, the judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

---

[5] The defendants ask that we affirm summary judgment on Jones's due-process claim related to the alleged falsification of documents by Green on the alternative ground that "Jones[] has no free-standing constitutional right to be free from false disciplinary charges." "The district court did not address this issue, and we decline to do so in the first instance," particularly because of the scant record before us. *Harrison v. Quarterman*, 496 F.3d 419, 429 (5th Cir. 2007); *Casados v. United States*, 425 F.2d 723, 724 (5th Cir. 1970) ("On the scant record of the present appeal we are unable to resolve these questions, and conclude that the case should be remanded to the district court.").

The defendants also ask us to affirm the district court's decision to dismiss Jones's claims with, rather than without, prejudice. Because we vacate the district court's summary-judgment order, we need not reach that issue.